Cynthia A. Ricketts (Arizona Bar No. 012668)
cindy.ricketts@dlapiper.com
Kate Frenzinger (Arizona Bar No. 023100)
kate.frenzinger@dlapiper.com
DLA PIPER US LLP
2415 E. Camelback Road, Suite 700
Phoenix, Arizona 85006
Telephone: (480) 606-5112
Facsimile:  (480) 606-5510

Jay R. Campbell (Admitted *pro hac vice*)
jcampbell@rennerotto.com
Todd R. Tucker (Admitted *pro hac vice*)
ttucker@rennerotto.com
RENNER, OTTO, BOISSELLE & SKLAR, LLP
1621 Euclid Avenue, Nineteenth Floor
Cleveland, Ohio 44115
Telephone: (216) 621-1113
Facsimile:  (216) 621-6165

Attorneys for Plaintiffs Integrated Technology
Corporation, et al.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
### PHOENIX DIVISION

| | |
|---|---|
| Integrated Technology Corporation and Nevada Integrated Technology Corporation, ) ) ) | Case No. CV-06-02182-PHX-ROS |
| Plaintiffs/Counterdefendants, ) ) | Judge Silver |
| v. ) ) | **ITC'S BENCH BRIEF RE REASONABLE ROYALTY** |
| Rudolph Technologies, Inc., et al., ) ) ) | **DAMAGES  AND RENEWED MOTION FOR TWO-SUPPLIER** |
| Defendants/Counterclaimants. ) ) ) ) ) | **MARKET TEST INSTRUCTION** |

## I.      INTRODUCTION

During the charging conference held on December 16, 2011, the Court posed questions regarding the law governing reasonable royalty damages and denied the portion of ITC's lost profits jury instruction relating to the two-supplier market test for lost profits.  This brief is intended to address those issues and renew ITC's request to include a two-supplier market instruction as part of the lost profits instruction.

## II.     ITC IS ENTITLED TO A TWO-PLAYER MARKET INSTRUCTION

ITC has maintained from the outset of this case that the market for probe card inspection systems that perform scrub testing is a two-supplier market.  Equally important, ITC disclosed its reliance on two-supplier market cases to Rudolph *at least a year and half ago*.   As trial has proven, ITC's assertion is factually correct and the jury should be allowed to consider evidence of a two-player market in the context of the *Panduit* test when determining lost profits damages.

The two player market issue was extensively explored at trial.  ITC's owner and founder, Rod Schwartz, testified that ITC and Rudolph compete in a two-player market:

```
24  Q.  We talked about the '894 patent.  Now, have you ever
25  licensed that patent to anybody?

                    United States District Court
```

```
                                                        274

                    RODNEY E. SCHWARTZ - Direct

 1  A.  No, we have not.
 2  Q.  And why not?
 3  A.  Well, if we licensed this is patent to another company,
 4  licensing means they would have the right to practice that
 5  patent, to sell equipment under that patent, anything they sold
 6  would be taking a sale away from us.
 7          So the only practical thing would be if we could make
 8  as much money with them selling the equipment.  In other words,
 9  they sold it and paid us as much as we would make in profit
10  would be the only way possible it could ever be licensed and
11  nobody is going to do that.
```

(Schwartz Direct, Tr. at 273: 24-274:11.)

2

The two-supplier market theory was also repeatedly addressed with ITC's

damages expert, Mr. McDonough, during trial:

| | | |
|---|---|---|
| 13 | Q.   And did your analysis through here, did it bear out that | |
| 14 | it was a two-player market, in your mind? | |
| 15 | A.   What I have just talked about and everything I did | 04:20:28 |
| 16 | suggests that that assertion is correct, that it is a | |
| 17 | two-player market. | |
| 18 | Q.   And in a two-player market, as we just discussed, if one | |
| 19 | company makes a sale, that means the other company has lost it? | |
| 20 | A.   Exactly.   There's only you and me and they are going to | 04:20:43 |
| 21 | buy from you or from me. | |
| 22 | Q.   So but for one party's sale, that is causing the other | |
| 23 | one's loss? | |
| 24 | A.   But for your actions I would have made sale. | |

(McDonough Direct, Tr. 636:13-24; *see also* 632:5-13; 633:5-7; 634:24-635:18.

Perhaps more important, the head of Rudolph's probe card inspection systems

division conceded that the only market suppliers are ITC and Rudolph:

| | | |
|---|---|---|
| 18 | Q.   The operative thing you said there is they may buy from | |
| 19 | somebody.   Now, of all of these customers, the people they can | |
| 20 | buy from would be ITC or Rudolph; right? | 02:56:08 |
| 21 | A.   If they weren't developing it themselves, yes. | |
| 22 | Q.   Yes.   Thank you. | |

(Little Direct, Tr. 585:18-22.)

Similarly, Rudolph's chief witness on market conditions, Mr. Coil, admitted that

ITC and Rudolph make up a two-player market for probe card analyzers:

```
 5   Q.   So when we look at this chart in 2007, essentially Beijert   09:32:50
 6   doesn't really do anything in the next year afterwards.  We
 7   know MJC and TCL aren't actively marketing so the only two real
 8   participants in this market when this was made, would you
 9   agree, were API and ITC?
10   A.   For probe card analyzers, yes.                               09:33:14
11   Q.   Okay.  So at this point, 2007, you would agree with me
12   that for probe card analyzers, it was essentially a two-player
13   market?
14   A.   Yes, essentially.
```

(Coil Cross-examination, Tr. 956:5-14)

As the Federal Circuit holds, "[t]o recover lost profits a patentee must show that 'but for' infringement it reasonably would have made the additional profits enjoyed by the infringer."  *Micro Chemical Inc. v. Lextron, Inc.,* 318 F.3d 1119,1122 (Fed. Cir. 2003) (vacating district court summary judgment of no lost profits, reversing denial of summary judgment that an alleged noninfringing alternative was available, and remanding for a determination on lost profits).  As *Micro Chemical* further holds, "[t]his Court has **not restricted patentees to any one particular method** of proving 'but for' causation."  *Id*. (emphasis added).  Indeed, the "*Panduit* **and** two-supplier market tests are recognized methods of showing 'but for' causation."  *Id*. (emphasis added).

In *Micro Chemical*, the Federal Circuit held that the district court erred in determining that the patentee could not apply the two-supplier market test to prove lost profits and further held that the patentee could resort to either *Panduit* or the two-supplier market test.  *Id*. at 1125.  As the Federal Circuit makes clear, to use the two-supplier market test, the patentee "must show, on remand, with reasonable probability, that there are only two suppliers of [the machines at issue]."  *Id*.  As shown above, ITC has already cleared that hurdle.

Rudolph's own witnesses have admitted that there are only two suppliers: ITC and Rudolph.  Given these admissions (facts which Rudolph has disputed for years leading up to trial), ITC is entitled to establish "but for" damages using the two-supplier market test

4

1    set out in *Micro Chemical*.  In fact, that test is incredibly helpful to the jury as it reduces

2    the burden of applying each of the *Panduit* factors.  In the two-supplier market situation,

3    "it is reasonable to assume, provided the patent owner has the manufacturing and

4    marketing capabilities, that it would have made the infringer's sales."  *Micro Chemical*,

5    318 F.3d at 1124.

6           Finally, it should be noted that Rudolph's claim that ITC's two-supplier market

7    theory is somehow new is simply not true.  Far from Rudolph's statements at the

8    charging conference that ITC first presented its position on a two-supplier market "last

9    night" (Tr. at 1656:5) and "that's not a theory that was ever presented in this case" (Tr.

10   1657:14-15), ITC disclosed *Micro Chemical* as support for its damages case ***over a year***

11   ***ago*** in the parties' March 2010 Joint [Proposed] Pretrial Order.  (Docket No. 307.)

12   Indeed, that ***same case*** was included in the revised Pretrial Order filed on October 28,

13   2011 for this trial with Rudolph's current counsel. (Docket No. 408.)

14          Accordingly, ITC is entitled to present the jury with language that clarifies the

15   impact of a two-supplier market on the *Panduit* test and reduce the burden on the jury:

16   "In essence, the two-supplier market test collapses the first two Panduit factors into one

17   'two suppliers in the relevant market' factor." *Id.*

18   **III.   RUDOLPH'S ROYALTY RATE NEED NOT BE ACCEPTED**

19          Rudolph's expert's reasonable royalty calculation is not the sole basis for

20   determining a reasonable royalty in this case—indeed, expert testimony is not required ***at***

21   ***all*** to determine a reasonable royalty.  "[S]ection 284 is clear that expert testimony is not

22   necessary to the award of damages, but rather 'may [be] receive[d] … as an aid.'"  *Dow*

23   *Chemical Co. v. Mee Industries, Inc.*, 341 F.3d 1370, 1382 (Fed. Cir. 2003) (holding that

24   it was error for a district court to conclude that no damages could be awarded because the

25   testimony of the patentee's damages expert had been excluded.)

26          Equally important, ITC has established through testimony that any license of the

27   the '894 patent would require a royalty rate equal to the profits its makes on the sales of

28   each probe card inspection system.  (Schwartz Direct, Tr. at 273: 24-274:11 (reprinted

above).)  While speculation is not appropriate, the Federal Circuit holds that a reasonable royalty based on the patentee's profits (particularly in the case of an "unwilling" licensee) is a reasonable damages measure. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995) ("Furthermore, the fact that the award was based on and was a significant portion of the patentee's profits also does not make the award unreasonable. The language of the statute requires 'damages adequate to compensate,' which does not include a royalty that a patentee who does not wish to license its patent would find unreasonable.")

Ignoring this precedent, Rudolph asked the Court to cap any reasonable royalty damages at 0.5%--an exceedingly low amount and well below what ITC testified it would accept in the event it were forced to license the '894 patent.  Worse, Rudolph's expert created this royalty rate using a hypothetical negotiation that entirely disregarded the facts developed at trial, including ITC's history of licensing (none), willingness to license (none), the parties' commercial relationship (competitors in a two-supplier market), and the value of the patent to ITC (high).  In fact, Rudolph appears to want to replace the entirety of the *Georgia-Pacific* factors with only one—its expert opinion.  In sum, Rudolph's royalty rate is based the mistaken assumption that (1) ITC is far more willing to license its patents than the evidence supports, and (2) that jury is bound to accept its expert testimony.  That is not a proper basis to calculate a reasonable royalty, let alone cap the royalties available to ITC for Rudolph's infringement.

ITC's founder and vice president plainly testified that (1) he is not a willing licensee, and (2) any licensee would need to pay "as much as we would make in profit." (Schwartz Direct, Tr. at 273: 24-274:11.)  Rudolph and its expert ignored this testimony in arriving at the .5% royalty.  As the Federal Circuit explains, Rudolph's hypothetical negotiation computation leads to "***absurd***" results where—as is the case here—the patentee is an "unwilling" license. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538,

6

1554 n. 13 (Fed. Cir. 1995) ("The hypothetical negotiation is often referred to as a "willing licensor/willing licensee" negotiation.  However this is an inaccurate, and even absurd, characterization when, as here, the patentee does not wish to grant a license.")  As the Federal Circuit explained, "what an infringer would prefer to pay is not the test for damages." *Rite-Hite Corp*, 56 F.3d 1538 at 1555.

Even assuming that Rudolph's expert's reasonable royalty calculation accurately weighed the evidence, the Court is not bound to accept Rudolph's expert's calculation.  In fact, it is not bound to accept **either party's calculation**.  *SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.*, 926 F.2d 1161, 1168 (Fed. Cir. 1991) ("A court is not restricted in finding a reasonable royalty to a specific figure put forth by one of the parties.").  Accordingly, the jury should be permitted to weigh all the evidence presented and be free to accept or reject that evidence—including Rudolph's expert testimony—in line with Federal Circuit law.

## IV.   CONCLUSION

For the reasons discussed above, ITC respectfully moves the Court to include its two-supplier market test instruction with the jury charge.  Moreover, the Court should permit the jury to weight the evidence presented with respect to a reasonable royalty (should it be necessary) as required by the Federal Circuit.

Date:  December 19, 2011                    Respectfully submitted,

                                                         s/ *Todd R. Tucker*
                                                        Cynthia A. Ricketts
                                                        Kate Frenzinger
                                                        DLA PIPER US LLP
                                                        2415 E. Camelback Road, Suite 700
                                                        Phoenix, Arizona 85006

7

Telephone: (480) 606-5112
Facsimile:  (480) 606-5510

Jay R. Campbell
Todd R. Tucker
Joshua M. Ryland
RENNER, OTTO, BOISSELLE & SKLAR, LLP
1621 Euclid Avenue, Nineteenth Floor
Cleveland, Ohio 44115
Telephone: (216) 621-1113
Facsimile:  (216) 621-6165

*Attorneys for Integrated Technology
Corporation, et al.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2011, the foregoing **ITC'S BENCH BRIEF RE REASONABLE ROYALTY DAMAGES AND RENEWED MOTION FOR TWO-SUPPLIER MARKET TEST INSTRUCTION** was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

s/ *Todd R. Tucker*
*Attorney for Integrated Technology*
*Corporation, et al.*